**Joan DeBRY and Robert J. DeBry, Plaintiffs and Appellants,**

v.

**OCCIDENTAL/NEBRASKA FEDERAL SAVINGS BANK and Kym C. Meehan, dba Resort Property Management and Lodging, Defendants and Respondents.**

**No. 21003.**

Supreme Court of Utah.

April 29, 1988.

H. Brian Davis, Robert J. DeBry, Dale F. Gardiner, Salt Lake City, for plaintiffs and appellants.

Verden E. Bettilyon, Salt Lake City, for Occidental/Nebraska.

Craig G. Adamson, Salt Lake City, for Meehan.

DURHAM, Justice:

Plaintiffs Joan and Robert DeBry filed this interlocutory appeal following the lower court's dismissal of their claims against defendant Occidental/Nebraska Federal Savings Bank and an award of $994.75 in bad faith attorney fees pursuant to Utah Code Ann. § 78-27-56 (1987) to Occidental. Plaintiffs challenge the lower court's finding concerning the scope of a stipulation the parties entered into and the award of attorney fees. Plaintiffs also contend that they should be awarded attorney fees based on Occidental's bad faith actions concerning a supersedeas bond previously filed by plaintiffs.

This case arises from the transfer of ownership of a condominium from plaintiffs to Nebraska Savings and Loan, Occidental's predecessor in interest. Nebraska Savings had initiated foreclosure proceedings against plaintiffs. In settlement, plaintiffs gave Nebraska Savings the condominium deed, and Nebraska Savings agreed to extinguish plaintiffs' mortgage debt and to forego seeking a deficiency judgment against them. As part of this agreement, on November 14, 1984, plaintiffs and Nebraska Savings entered into a stipulation which stated:

> By this Stipulation and through this Court's Order, Plaintiffs hereby release and forgive all claims and causes of action held against Verden Bettilyon, successor trustee and Nebraska Savings and Loan Association, a Nebraska corporation. Additionally, the said defendants release and forgive all claims and causes of action held against plaintiffs Robert and Joan DeBry. Said mutual release shall be effective against all claims held by these parties now or hereafter arising due to the real and personal property and improvements described above.

The property and improvements "described above" were listed in the stipulation as:

> Unit No. C11, Sun Creek Condominiums, a Utah condominium project, together with a 3.39 percent undivided ownership interest in the common areas and facilities of said condominiums, as identified and established in the Record of Survey Map filed of record May 3, 1982, as Entry No. 190970 and the "Declaration and By-laws of Sun Creek Condominiums" recorded May 3, 1982, as Entry No. 190971 in Book M-218 at pages 637-80, and the Amendments to said Declaration and By-laws recorded in Summit County, Utah.

On December 5, 1984, the trial judge signed an order which confirmed the stipulation. The following clause was included in the order: "The above-named parties hereby mutually release and forgive all claims and causes of action held now or hereafter arising from the real and personal property and improvements described above."

Plaintiffs and Occidental dispute the scope of the release contained in the stipulation and in the order. Plaintiffs claim

that an "equipment package," made up of kitchen and household items, was not included in the release. Plaintiffs brought this suit after they discovered that most of the items in the equipment package were missing from the condominium and from storage. Occidental claims that regardless of the status of the equipment package, the stipulation released Occidental from any future claims "arising from the real and personal property" described in the stipulation and that the equipment package was part of the personal property. Both parties admit that a "furniture package" was included within the ambit of the release, but they disagree about the inclusion of the equipment package.

Plaintiffs base their claim on the fact that the release covers only those claims arising from property or improvements "described above." The equipment package, they argue, was not attached to the real property and therefore was not part of the property described in the stipulation. This claim is neither verified nor disproved by the description found in the stipulation. However, the property description in the condominium mortgage security agreement between the parties includes "[a]ll of the furniture and personal property described on Exhibit 'A.'" Except for this additional phrase, the security agreement property description is identical to the property description found in the settlement agreement. Exhibit "A" is a list of furniture located in the condominium; the items which make up the equipment package are not mentioned either on Exhibit "A" or in the security agreement. It appears, therefore, that claims based upon the equipment package were not released by the stipulation or the court order.

Additional evidence of the parties' intent of the scope of the release may be garnered from correspondence between the parties' counsel. On November 9, 1984, plaintiffs' attorney sent the settlement agreement, which contained the stipulation, to Occidental's attorney with a cover letter. That letter stated:

Enclosed please find the Deed and Stipulation on the Suncreek Inn unit.

Bob [DeBry] tells me there is still certain personal property in the unit. Apparently, when the unit was purchased, a separate "equipment package" was also paid for. This included silverware, mixmaster, and other items. The cost of the package was $1,200.00.

Bob and Joan [DeBry] will sell the property to your client for $800.00. Such equipment would obviously make the unit immediately rentable.

If your clients have no interest in the property, the DeBrys will remove it this weekend.

Please let me know.

The settlement agreement was signed by both parties on November 14. On December 18, Occidental's attorney responded to the cover letter, stating: "Please contact Mr. Polichette at the condominium to make arrangements to pick up your equipment package."

This Court has stated, "[A] cardinal rule in construing ... a contract is to give effect to the intentions of the parties...." *Buehner Block Co. v. UWC Assocs.*, 78 Utah Adv. Rep. 7, 9 (Mar. 29, 1988) (listed in Utah Adv. Rep. as *UWC Assocs. v. Home Savings & Loan*); see also *Nixon & Nixon, Inc. v. John New & Assocs.*, 641 P.2d 144, 146 (Utah 1982) ("Contracts are to be construed in light of the reasonable expectations of the parties as evidenced by the purpose and language of the contract."); *Thomas J. Peck & Sons, Inc. v. Lee Rock Prod., Inc.*, 30 Utah 2d 187, 191, 515 P.2d 446, 448 (1973) ("[T]he meaning and effect to be given a contract depends [sic] upon the intent of the parties."). The conduct of the parties leads us to conclude that they did not intend the equipment package to come within the scope of the release. Occidental did not believe that the package was part of the personal property to which it was entitled under the settlement agreement; the letter from its attorney to plaintiffs' attorney clearly demonstrates the "reasonable expectations" of the parties concerning the property. The cover letter was included with the settlement agreement; it was therefore not superseded by the provisions of the agreement. It is clear from their correspondence that plaintiffs and Occidental intended the property to remain in plaintiffs' possession.

Occidental argues that although plaintiffs may own the property, they cannot bring suit against Occidental for any claims arising from the property. As previously noted, the equipment package did not fall within the scope of the release, and plaintiffs are not prevented from bringing suit for damage done to it. Occidental's position thereby becomes untenable since one with a legally protected interest in property also has the right to bring suit for injury to that interest in the absence of a specific agreement otherwise. *Cf.* 73 C.J.S. *Property* §§ 6, 26 (1984).

Accordingly, we reverse the lower court's dismissal of plaintiffs' complaint against Occidental/Nebraska Federal Savings Bank and remand the case for further proceedings.

This holding necessarily negates the lower court's finding that this action was "without merit and not brought or asserted in good faith" and its award of bad faith attorney fees pursuant to Utah Code Ann. § 78–27–56 (1987). Therefore, the award of attorney fees to Occidental is also reversed.

■ Finally, there is no merit to plaintiffs' claim for attorney fees based on Occidental's attempts to obtain the supersedeas bond plaintiffs posted when they appealed a lower court judgment which they incorrectly believed to have been certified under Utah Rule of Civil Procedure 54(b). The procedural history of this case following the grant of Occidental's motion to dismiss is confusing, in large part due to the motions and appeal filed by plaintiffs' counsel. We cannot say that Occidental's actions were necessarily undertaken in bad faith. Occidental's "contradictory actions" appear simply to be confused responses to a confused procedural setting.

HALL, C.J., HOWE, Associate C.J., and STEWART, and ZIMMERMAN, JJ., concur.